IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WGP, LLC
BRASS EAGLE, LLC and
JT USA, LLC                                                                PLAINTIFFS

v.                    NO. CV- 06-5013

HYBRID TECHNOLOGIES, INC.                                                  DEFENDANT

## COMPLAINT

Come now the plaintiffs, WGP, LLC, ("WGP"), Brass Eagle, LLC and JT USA, LLC (collectively referred to as "the plaintiffs), by and through their attorneys, Keisling, Pieper & Scott, and for their complaint against the defendant, Hybrid Technologies, Inc. ("Hybrid"), allege the following:

### PARTIES, JURISDICTION AND VENUE

1. WGP, LLC, formerly known as Worr Game Products, LLC, is a Delaware limited liability company. WGP does substantial business in this District and Division of the United States District Court. Furthermore, WGP has and conducts material legal, accounting, marketing and human resource functions within this District and Division of the United States District Court.

2. Brass Eagle, LLC is a limited liability company organized and existing under the laws of Delaware. Brass Eagle, LLC's principal place of business is located at 1201 S.E. 30th Street, Bentonville, Arkansas 72712. Brass Eagle, LLC does substantial business in this District and Division of the United States District Court.

3. JT USA, LLC is a limited liability company organized and existing under the laws of Delaware. JT USA, LLC does substantial business in this District and Division of the United States

District Court.

4. Hybrid Technologies, Inc. is a California corporation with its principal place of business located in Anaheim, California, and it does substantial business in this District and Division of the United States District Court.

5. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 Section 271, *et seq.* of the United States Code. It further includes federal claims of trade dress infringement (15 U.S.C. § 1051, *et seq*) and trade dress dilution (15 U.S.C. § 1125, *et seq*). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338 and pursuant to 15 U.S.C. §§1051, *et seq.*

6. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over the defendant and venue is properly laid in the Western District of Arkansas pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400, in that the defendant is doing and transacting business within this District and has committed the acts complained of herein within this District and elsewhere, which acts have caused injury both within this District and elsewhere.

## FACTUAL BACKGROUND

8. The game of paintball is an expanding and popular team sport within the United States and worldwide. In playing the game of paintball, teams compete under various scenarios in which the players, protected by goggles and other appropriate protective gear, attempt to accomplish certain goals and objectives during which they are armed with paintball "markers" which "shoot" "ammunition" comprised of colored balls filled with water-soluble "paint."

9. This case involves the design and sale of paintball markers which, by some, may be referred to as "guns." Nevertheless, the appropriate term of art used by those involved in the paintball industry is to refer to such equipment as "markers."

10. In 1985, Bud Orr ("Orr"), the founder of WGP and known to many as the "paintball visionary", began inventing paintball markers. Combining his inventive nature with the tremendous potential for the paintball game, Orr has invested many hours inventing markers that enable a user to dominate a field because of their superior accuracy, firing rate, and range.

11. By 1986, Orr had played a central role in the beginning of the paintball phenomenon and had established himself as an expert. Because of the public's intense demand for his paintball markers, Orr sought to establish an entity to manufacture, distribute, market, and sell his markers, and thus formed Worr Game Products, the predecessor to WGP, LLC. WGP's predecessor quickly transformed into the top paintball manufacturer in the market, developing a reputation for excellence in the paintball community.

12. The first paintball marker designed by WGP was known as the "Sniper." The Sniper had a unique appearance in terms of size and shape, distinguishing itself from other markers in the paintball industry. Thereafter, beginning in or around 1991, Orr and WGP developed, manufactured, and marketed numerous other distinctive, semi-automatic models of paintball markers. These markers became known as the famed AUTOCOCKER® brand markers.

13. Through years of hard work and perseverance, WGP's AUTOCOCKERS® have become widely acclaimed as the leading high-end paintball markers in the industry. WGP maintains an upstanding business practice, bringing its customers safe, technically sound, new and advanced equipment.

14. WGP has actively advertised, promoted and publicized its products to the trade and to the public. Since its inception, WGP has expended over five million dollars in promotion and advertising alone. It further expends resources on internal employees and equipment dedicated to promoting the image of its products. WGP advertises through magazines, exhibitions at trade shows, the internet, and it sponsors paintball tournaments and paintball teams.

15. WGP has invested substantial sums of time, money and effort to develop, advertise and promote its products. As a result of the popularity of WGP's products and WGP's extensive sales throughout the country, WGP's goodwill is an integral and indispensable part of WGP's business.

16. WGP's markers are in the high performance marker price range. These markers are far and away the best seller in their price range and are one of the best-selling lines of markers overall.

17. WGP has been successful in developing an exclusive and distinctive feel and appearance for its paintball markers and paintball marker bodies. WGP's markers' appearance is easily recognized in the paintball industry and by paintball marker consumers and enthusiasts as synonymous with WGP.

18. WGP's markers are the most recognizable markers on the market today. The distinctive appearance features include, but are not limited to, its overall appearance, the shape and design of its body style, its front block, its rear cocking block, and/or its sound while being fired.

19. WGP possesses many intellectual property rights in its paintball markers, some of which are protected by United States patents and trademark registrations.

20. WGP possesses other intellectual property rights at common law, including at least

one trade dress for its unique paintball brand markers.

21. Paintball markers have been manufactured exclusively by WGP in the United States for many years. These markers have earned a national reputation for excellence, and they are widely regarded by the public as the highest quality and the most reliable paintball markers available.

22. Each of WGP's paintball markers has arbitrary, nonfunctional and distinctive design aspects. An example of WGP's marker is attached hereto as Exhibit A. This example is incorporated solely for informational purposes and should not be viewed as a limitation of WGP's claimed trade dress.

23. On September 3, 1999, WGP filed an application to register the immediately recognizable design for one of its paintball markers with the PTO. This WGP paintball marker design has become a unique and well-known source identifying indicia to the public. WGP's paintball marker design issued as Registration No. 2,689,494 on February 18, 2003. A true and correct copy of the certificate of Registration issued by the PTO for WGP's paintball marker design is attached hereto as Exhibit B (hereinafter referred to as "WGP's Registered Trade Dress").

24. The arbitrary, nonfunctional and distinctive design features which make up the unregistered trade dress of WGP's line of paintball markers include: 1) the overall size, shape and appearance of the markers and the arrangement of their features; 2) the size, shape and appearance of the marker bodies, including the unique and arbitrary arrangement of their features; 3) the size, shape and appearance of the front block, front-end regulator, three way valve, and ram body of the markers; 4) the size, shape, appearance and operational action of the bolt and block cocking features at the rear of the markers (called the "cocking block").

25. Additionally, WGP asserts that the sound of its markers being fired is distinctive,

5

arbitrary and non-functional. As such, a WGP marker may be identified on a playing field by sound alone. WGP asserts that the sound constitutes a separate protectable trade dress for which it is entitled to protection.

26. The particular appearance and execution of these features on WGP's markers is not required for the proper functioning of the markers. WGP's particular execution of these features produces a look, sound and feel which is unique and distinctive in appearance. The distinctive features identified in the preceding paragraphs are collectively referred to hereinafter as "WGP's Unregistered Trade Dress."

27. The design and appearance of WGP's paintball markers were all original creations developed expressly by or for WGP. WGP was the first to make use of said designs and Trade Dresses.

28. The distinctive appearance of the WGP Trade Dresses has acquired secondary meaning with the relevant market, in that the market associates these Trade Dresses with WGP.

29. Throughout the years, WGP has made various improvements to its markers and in doing so, has sought patent protection for its intellectual property rights. Relevant to this case, United States Patent No.6,705,036, entitled "Trigger Assembly" was duly issued by the PTO on March 16, 2004, to inventor and WGP employee Jeffrey George Orr for such an improvement (the "'036 patent"). By means of an assignment recorded at the PTO on May 19, 2004, Jeffrey George Orr assigned to WGP, LLC all rights, title, and interest in the '036 patent. A true and correct copy of the patent certificate for the '036 patent is attached hereto as Exhibit C. The assignment is attached as Exhibit D.

30. WGP and its sister companies, Brass Eagle, LLC and JT USA, LLC, also license

intellectual properties from other inventors from time to time. Also relevant to this case, United States Patent No.6,591,824 entitled "Positive Fit Feed Adapter for Paintball Gun" was duly issued by the PTO on July 15, 2003, to inventor Forest A. Hatcher for such an improvement (the "'824 patent"). The '824 patent is for securely coupling paintball hoppers to paintball markers. Thereafter, on January 29, 2005, Forest A. Hatcher issued an exclusive license to the plaintiffs for all rights associated with the '824 patent. A true and correct copy of the '824 patent is attached hereto as Exhibit E. As the exclusive licensees, WGP, Brass Eagle, LLC and JT USA, LLC have the right to enforce the '824 patent against infringers.

31. The defendant does business as and offers its markers and other products under the trade name of Hybrid Technologies. The defendant advertises its products in magazines and via internet web-sites directed to, available in and accessible from this District and Division of the United States District Court. At relevant times, defendant has operated an interactive website, www.hybrid-paintball.com, which markets the infringing markers. Furthermore, the defendant's infringing markers may be obtained at retail establishments within this District and Division of the United States District Court and may be acquired via third party interactive websites, including among others, www.assassinspaintball.com, which are available to consumers within this District and Division of the United States District Court.

32. Hybrid is a direct competitor of WGP. On information and belief, the defendant makes, uses, imports and/or distributes inferior quality paintball markers, marketed primarily under the names "Quest Numattix" and "Rival Numattix". The defendant's infringing products are collectively referred to hereinafter as "Numattix markers". Examples of Numattix markers are attached hereto and incorporated herein as Exhibit F. Numattix markers have a nearly identical and

confusingly similar appearance to WGP's paintball markers and trade dresses. Furthermore, certain Numattix markers utilize a trigger assembly which infringes upon the '036 patent.

33.     On information and belief, the defendant makes, uses, imports and/or distributes inferior quality paintball marker collets, marketed primarily under the name "Hedlok". The defendant's infringing collet products are referred to hereinafter as "Hedlok collets". Examples of Hedlok collets are attached hereto and incorporated herein as Exhibit G. Certain Hedlok collets infringe upon the '824 patent.

34.     On information and belief, the defendant's paintball markers and collets suffer from a negative public impression because they are inferior products. The defendant has willfully infringed upon the '036 patent, the '824 patent and WGP's trade dress.

35.     Plaintiffs' reputation in the paintball community has suffered irreparable harm in the form of unwarranted negative impressions by confused consumers as a direct result of the defendant's infringing conduct. The plaintiffs will continue to suffer irreparable harm if the defendant is allowed to continue to make and distribute its infringing paintball markers and collets.

36.     It is impossible to manufacture a paintball marker that is confusingly similar to plaintiffs' products without infringing upon one or more of plaintiffs' intellectual properties.

37.     The intentional similarity of the defendant's Numattix markers to WGP's paintball markers is likely to confuse consumers, causing them to purchase the defendant's inferior products when they intended to purchase WGP's quality products.

38.     Upon information and belief, Hybrid has infringed plaintiffs' intellectual property rights through its sales and distribution, importation and other advertising activities in various channels of commerce, including but not limited to, printed publications, internet communications,

in person communications at trade shows and tournaments, and other various medias.

39. Upon information and belief, the defendant's infringing products have a substantial effect on interstate commerce and on plaintiffs' own intellectual property rights.

40. As early as May of 2004, WGP demanded that Hybrid cease its infringing activities related to the Quest Numattix marker. Hybrid continues to willfully infringe the plaintiffs' intellectual property rights.

41. As a direct and proximate result of the defendant's trade dress infringement, patent infringement and unfair competition as alleged herein, plaintiffs have been, and continue to be, irreparably harmed and injured in their business and property and have sustained, and will continue to sustain, damages to their business, goodwill, reputation and profits in an amount to be proven at trial, but believed to exceed amounts required to establish federal diversity.

## COUNT I-TRADE DRESS INFRINGEMENT

42. The above paragraphs are reincorporated as if set forth in full.

43. The above-referenced paintball marker design is shown in trademark Registration No. 2,689,494, which is valid and owned by the plaintiffs.

44. Furthermore, the distinctive appearance of the WGP paintball marker design is a unique and protectable unregistered trade dress of WGP.

45. The distinctive appearance of the WGP paintball marker design has acquired strong secondary meaning with the paintball consuming public.

46. By adopting a trade dress confusingly similar to that of WGP, the defendant has adopted and is using in commerce a symbol or device in connection with its products that is likely to cause confusion or to deceive as to the origin of such products, in that the consuming public is likely

to mistakenly believe that WGP manufactures such products, or that the defendant is associated with or is authorized by WGP to manufacture and sell such products. This constitutes a violation of 15 U.S.C. §1051 *et seq* ("the Lanham Act").

47. The defendant's intentional adoption and use of WGP's paintball markers distinctive appearance constitutes a willful infringement of WGP's trade dress in violation of the Lanham Act, 15 U.S.C. §1051, *et seq.*, and has caused damages to WGP.

48. As a result of the defendant's willful infringement, WGP has been, and continues to be, irreparably harmed.

49. WGP is entitled to a preliminary and permanent injunction prohibiting Hybrid Technologies, Inc. from infringing upon WGP's trade dress rights. Such an injunction is necessary to prevent irreparable harm to WGP, is in the public's interest and, on balance, favors the legitimate interests of WGP.

50. WGP is entitled to actual and enhanced damages for the defendant's willful acts and to reasonable attorney's fees and costs.

## COUNT II-TRADE DRESS DILUTION

51. The above paragraphs are reincorporated as if set forth in full.

52. The distinctive appearance of WGP's paintball marker is famous.

53. After the distinctive appearance of WGP's paintball marker became famous, the defendant adopted WGP's protected trade dress for its confusingly similar products and is using that trade dress in commerce.

54. The defendant's use of WGP's paintball marker design in connection with its paintball markers dilutes WGP's protected trade dress in violation of the Federal Trademark Dilution

Act, 15 U.S.C. § 1125 *et seq.*, and has caused damages to WGP.

55.  As a result of the defendant's willful infringement, WGP has been, and continues to be irreparably harmed.

56.  WGP is entitled to a preliminary and permanent injunction prohibiting the defendant from infringing upon WGP's protected trade dress.

57.  WGP is entitled to actual and enhanced damages for the defendant's willful acts and to reasonable attorney's fees and costs.

## COUNT III-PATENT INFRINGEMENT

58.  The above paragraphs are reincorporated as if set forth in full.

59.  The above-referenced patent, Patent No. 6,705,036, is valid, was duly and legally issued by the United States Patent and Trademark Office, and is owned by WGP exclusively.

60.  WGP products have been marked with United States Patent Number 6,705,036.

61.  The defendant is making, using, selling, and/or offering for sale paintball markers, which infringe on one or more claims of the '036 Patent in contravention of 35 U.S.C § 271.

62.  The defendant's activities with respect to WGP's patent have been without the express or implied license of WGP.

63.  As early as May, 2004, Hybrid Technologies was delivered written notice of its infringing activities by WGP.

64.  Hybrid Technologies received and then willfully disregarded the written notice.

65.  The defendant has literally infringed upon the '036 patent.

66.  The defendant has infringed upon the '036 patent pursuant to the doctrine of equivalents.

67. The defendant's infringement of the '036 patent is willful.

68. The defendant's infringing actions have caused, and will continue to cause if not enjoined, irreparable harm to WGP.

69. WGP is entitled to a preliminary and permanent injunction prohibiting the defendant from infringing upon the '036 patent.

70. WGP is entitled to actual and enhanced damages for the defendant's willful acts and to reasonable attorney's fees and costs.

## COUNT IV-PATENT INFRINGEMENT

71. The above paragraphs are reincorporated as if set forth in full.

72. The above-referenced patent, Patent No. 6,591,824, is valid, was duly and legally issued by the United States Patent and Trademark Office, and is licensed exclusively by the plaintiffs.

73. Plaintiffs' products have been marked with United States Patent Number 6,591,824.

74. The defendant is making, using, selling, and/or offering for sale paintball marker collets, which infringe on one or more claims of the '824 Patent in contravention of 35 U.S.C § 271.

75. The defendant's activities with respect to plaintiffs' patent have been without the express or implied license of any of the licensees.

76. The defendant has literally infringed upon the '824 patent.

77. The defendant has infringed upon the '824 patent pursuant to the doctrine of equivalents.

78. The defendant's infringement of the '824 patent is willful.

79. The defendant's infringing actions have caused, and will continue to cause if not

enjoined, irreparable harm to the plaintiffs.

80. Plaintiffs are entitled to a preliminary and permanent injunction prohibiting the defendant from infringing upon the '824 patent.

81. Plaintiffs are entitled to actual and enhanced damages for the defendant's willful acts and to reasonable attorney's fees and costs.

## COUNT V-ARKANSAS TRADE DRESS DILUTION

82. The above paragraphs are reincorporated as if set forth in full.

83. The distinctive appearance of WGP's paintball marker is famous in Arkansas.

84. After the distinctive appearance of WGP's paintball marker became famous, the defendant adopted WGP's protected trade dress for its confusingly similar products and is using that trade dress in commerce.

85. The defendant's use of WGP's paintball marker design in connection with its paintball markers dilutes the distinctive quality of WGP's protected trade dress in violation of Ark. Code Ann. § 4-71-213 *et seq*.

86. WGP is entitled to a preliminary and permanent injunction prohibiting the defendant from infringing upon WGP's protected common law trade dress, as well as all other relief authorized by Arkansas law.

87. WGP is entitled to reasonable attorney's fees and costs.

## COUNT VI-VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT

88. The above paragraphs are reincorporated as if set forth in full.

89. The defendant is distributing paintball markers in Arkansas that are nearly identical and carry a confusingly similar appearance to WGP's products.

90. By choosing to imitate WGP's Marks and goods, the defendant has engaged in unconscionable, false, misleading and deceptive acts, which are strictly prohibited under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq* (Repl. 2001)(the "ADTPA").

91. As a result, WGP has incurred (and will continue to incur) damages that were reasonably foreseeable and proximately caused by the defendant's conduct.

92. WGP is entitled to recover its actual damages in an amount to be determined at trial, and in excess of $75,000.00, and reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-113(f).

93. The defendant's acts identified herein were undertaken with the intent of causing injury to WGP or alternatively, with the reckless disregard of the consequences from which malice may be inferred. Therefore, to the extent authorized by law or equity WGP is entitled to an award of punitive damages against the defendant.

94. Any damages should be enhanced because of the defendant's willful acts.

## REQUEST FOR RELIEF

The plaintiffs request the following relief:

A. Judgment that WGP's registered and unregistered trade dress are valid and enforceable and have been infringed upon by the defendant;

B. Judgment that WGP's '036 patent is valid and enforceable and has been willfully infringed by the defendant;

C. Judgment that the plaintiffs' '824 patent is valid and enforceable and has been

willfully infringed by the defendant;

D. A preliminary and/or permanent injunction prohibiting the defendant from infringing upon the above referenced patents; from using the distinctive trade dress of WGP on or in connection with its product; and from further infringing the intellectual property of the plaintiffs in any manner;

E. Judgment of monetary damages in excess of $75,000.00 to compensate plaintiffs for the defendant's infringements, but in no event less than a reasonable royalty for the use made of the invention by the defendant's, together with interest and costs as fixed by the Court;

F. Judgment that the defendant be required to pay plaintiffs such damages as plaintiffs have sustained as a consequence of the defendant's infringement of said federal trade dress interests, and to account for:

    a. all gains, profits and advantages derived by the defendant's infringement of WGP's trade dress;

    b. all gains, profits and advantages derived by the defendant by said trade practices.

G. Judgment that the damages be trebled because of the defendant's willful acts, as provided in 35 U.S.C. § 285;

H. Judgment that the defendant be ordered to pay WGP actual damages in excess of $75,000.00 for the defendant's violations of the Arkansas Deceptive Trade Practices Act, for the costs of this action and attorneys' fees as provided by A.C.A. § 4-88-113(f);

I. An award of punitive damages against the defendant for its willful conduct and Judgment that plaintiffs be awarded such further and additional relief as this Court may deem just and equitable, including attorney's fees based upon the exceptional nature of this case.

## DEMAND FOR JURY TRIAL

WGP demands a trial by jury of all issues so triable.

        Respectfully submitted,

        WGP, LLC, BRASS EAGLE, LLC
        and JT USA, LLC,
        Plaintiffs

By: _____
        John M. Scott, #97202
        Trent C. Keisling, #93226
        S. Christian Gunn, #2003223
        Keisling Pieper & Scott, PLC
        One E. Center Street, Suite 217
        Fayetteville, AR 72701
        (479) 251-0800
        (479) 251-0801 (fax)